**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| PLANTSNAP INC., | ) | Adv. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC RALLS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT UNDER**</u>
<u>**SECTION 523 OF THE BANKRUPTCY CODE**</u>

PlantSnap Inc. ("**PlantSnap**"), by and through its undersigned counsel, submits the

following *Complaint for Determination of Nondischargeability of Debt Under 11 U.S.C.*

*§ 523 of the Bankruptcy Code* (the "**Complaint**") against Eric Ralls ("**Ralls**" or the "**Debtor**"),

and states as follows:.

**PARTIES AND JURISDICTION**

1.      PlantSnap is a corporation organized and existing by virtue of the laws of the State

of Delaware, registered to conduct business in Colorado, with its principal place of business

located at 1040 S Gaylord Street, Suite 67, Denver, Colorado 80209. PlantSnap is a mobile

application that allows users to identify plants, flowers, cacti, succulents, and mushrooms in

seconds with the click of a button on a mobile device.

2.      Defendant Eric Ralls is the Debtor herein and resides at 6691 Park Slope, Tyler,

Texas 75703.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b).

4.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409, because this adversary proceeding relates to bankruptcy case before this district and division. *See In re Ralls*, Ch. 11 Case No. 24-60504 (Bankr. E.D. Tex. Tyler Div. Aug. 18, 2024) (the "**Bankruptcy Case**").

6.      This proceeding has been brought in accordance with section 523 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4004 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7.      Pursuant to Bankruptcy Rule 7008, PlantSnap consents to adjudication and entry of final orders and judgments by this Court for any and all matters arising in or related to this adversary proceeding.

8.      This Complaint is timely because the last day by which PlantSnap may oppose discharge or dischargeability is November 25, 2024. *See* Bankruptcy Case, Docket No. 6.

### NATURE OF ADVERSARY PROCEEDINGS

9.      PlantSnap commenced this adversary proceeding to obtain a determination of the dischargeability of debts owed by Debtor to PlantSnap that were obtained by Debtor's fraud and willful and malicious conduct.

10.      In fact, Ralls confessed to a judgment for $2,500,000.00 based on fraud and malicious conduct in the attached "**Confession of Judgment**." *See* Exhibit 1.

11.      The Confession of Judgment was later entered in the District Court for San Miguel County, Colorado (the "**State Court**"). *See* Exhibit 2.

12.     Ralls was also found liable by the same State Court for stealing $705,000.00 from PlantSnap. *See* Exhibit 3.

13.     PlantSnap seeks an order declaring the $3,205,000.00 debt (collectively, the "**PlantSnap Judgments**") owed by Debtor to PlantSnap, and any interest due thereunder, nondischargeable under sections 523(a)(2), (a)(4), (a)(6), and (a)(19) of the Bankruptcy Code, awarding PlantSnap its costs, including reasonable attorneys' fees, incurred in this action; and awarding all other relief that the Court deems appropriate.

### FACTS

### PlantSnap's Formation

14.     Ralls founded PlantSnap in 2016.

15.     From PlantSnap's formation until March 9, 2021, Ralls was PlantSnap's majority shareholder, director, and Chief Executive Officer.

16.     PlantSnap owns a mobile application that allows users to identify plant types through their cell phone camera (the "**PlantSnap App**").

17.     PlantSnap's operations are conducted through numerous accounts, including, but not limited to, Alpine Bank, Amazon Web Services ("**AWS**"), Apple App Store Connect, CleverTap, Dropbox, Facebook, Firebase, GoDaddy, Google Play Console, Google Workspace Suite ("**G Suite**"), Huawei HMS Store, Imagga, Instagram, No Marker, Pinterest, QuickBooks, and Singular (collectively, the "**Accounts**").

18.     In February 2017, DEJ Partners, LLC f/k/a DEJ Family Limited Partnership ("**DEJP**") became PlantSnap's first major seed investor.

19.     Daniel Johnson ("**Johnson**") is the general partner of DEJP.

**Agreements Between PlantSnap, Ralls, and DEJP**

20.     Over the course of two years, PlantSnap, Ralls, and DEJP executed numerous agreements in which DEJP loaned money or extended credit to PlantSnap.

21.     PlantSnap defaulted on two of its obligations on February 24, 2021.

<u>Consolidated Note</u>

22.     PlantSnap and DEJP executed that certain Consolidated Note dated September 30, 2019 in the principal amount of $9,103,301.44 (the "**Consolidated Note**").

23.     The Consolidated Note consolidated, in part, obligations under various agreements, including the following:

> a.    Accounts Receivable Loan Pledge Agreement dated July 12, 2017 between the PlantSnap, Ralls, and DEJP, as amended by that the Amended and Restated Accounts Receivable Loan and Pledge Agreement dated August 9, 2017 (the "**A&R Agreement**").
>
> b.    Royalty Agreement dated July 26, 2017 between PlantSnap, Ralls, and DEJP, as amended by that certain Amended and Restated Royalty Agreement dated May 24, 2018 (the "**Royalty Agreement**").
>
> c.    Royalty Agreement dated September 30, 2018 between PlantSnap, Ralls, and DEJP (the "**Consolidated Royalty Agreement**").

24.     The Consolidated Note matured when DEJP demanded payment of the unpaid portion of the principal amount and any accrued but unpaid interest at any time after September 2, 2019.

25.     Under the Consolidated Note, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Consolidated Note when due.

26.     As security for PlantSnap performing its obligations under the Consolidated Note, as well as the A&R Agreement, Royalty Agreement, and Consolidated Royalty Agreement, Ralls agreed to pledge 750,000 shares of common stock in PlantSnap (the "**Pledged Shares**").

27.     The Consolidated Note states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]."

28.     The Consolidated Note states, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers."

29.     The Consolidated Note further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral."

30.     In connection with the Royalty Agreement, Ralls executed the Assignment Separate from Certificate (the "**Stock Power**").

31.     The Pledged Shares were secured at Pivotal Law Firm, Inc. ("**Pivotal**").

32.     The Stock Power enabled DEJP to effectuate taking possession of the Pledged Shares upon the occurrence of an event of default.

<u>Amex Agreement</u>

33.     PlantSnap, Ralls, and DEJP executed that certain Credit and Reimbursement Agreement dated August 15, 2017 (the "**Amex Agreement**," and with the Consolidated Note, the "**Obligations**").

34.     Pursuant to the Amex Agreement, Johnson authorized PlantSnap to use DEJP's American Express card (the "**Card**") in exchange for the repayment of card charges plus interest.

35.     The charged amounts and interest on those charged amounts became due and payable within five days of receipt of the Card statement.

36.     Under the Amex Agreement, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Amex Agreement when due, and fails to cure such default within five business days of written notice of the default.

37.     PlantSnap agreed to "only use the [Card] for reasonable or necessary company related expenses."

38.     PlantSnap agreed to "obtain prior written approval of [DEJP] prior to making charges in excess of $10,000."

39.     Ralls received one mile of airline rewards for each dollar charged on the Amex card.

40.     As security for PlantSnap performing its obligations under the Amex Agreement, Ralls agreed to pledge the Pledged Shares.

41.     The total number of the Pledged Shares pledged under the Amex Agreement was related to the total amount owed under the Amex Agreement at the time of the Event of Default.

42.     For example, if the total amount owed under the Amex Agreement at the time of the Event of Default was $3,000.00, then the total number of the Pledged Shares pledged under the Amex Agreement was 3,000.

43.     The Amex Agreement states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]."

44.     The Amex Agreement states, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers."

45.     The Amex Agreement further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral."

**PlantSnap Defaults on the Obligations**

46.     PlantSnap defaulted on the Obligations.

47.     As of February 24, 2021, PlantSnap failed to repay $11,398,304.11 in outstanding principal and interest under the Consolidated Note.

48.     As of February 24, 2021, PlantSnap failed to repay $978,043.23 in outstanding principal and interest under the Amex Agreement.

49.     On February 24, 2021, DEJP sent the Notice of Default and Demand for Repayment to PlantSnap (the "**Notice of Default**").

50.     On February 26, 2021, Ralls received the Notice of Default.

51.     PlantSnap failed to cure the defaults under the Obligations within five business days of the Notice of Default.

52.     An Event of Default occurred under the Obligations.

**Ralls Was Removed as a Shareholder, Director, or Officer of PlantSnap**

53.     On March 6, 2021, DEJP sent a letter to Ralls, notifying him that DEJP intended to exercise its right to take ownership of the Pledged Shares (the "**Notice of Invocation**").

54.     Ralls received the Notice of Invocation on March 8, 2021.

55.     On March 8, 2019, following receipt of the completed Stock Power and confirmation that Ralls received the Notice of Invocation, PlantSnap transferred the Pledged Shares from Ralls to DEJP on PlantSnap's stock ledger.

56.     On March 9, 2021, Pivotal delivered the Pledged Shares to Johnson and PlantSnap's counsel.

57.     DEJP became the majority shareholder of PlantSnap as a result of the transfer.

58.     On March 9, 2021, DEJP provided a signed written consent to PlantSnap that removed Ralls as a director on PlantSnap's Board of Directors (the "**Board**").

59.     DEJP appointed Johnson as the sole member of the Board.

60.     On March 9, 2021, the Board issued a Written Consent of the Board of Directors of PlantSnap Inc. (the "**Resolutions**").

61.     The Resolutions provided that:

    a.     Ralls was removed from any and all officer or director positions with PlantSnap;

    b.     Ralls removed as an authorized person and/or signatory on PlantSnap's accounts or contracts;

    c.     Ralls no longer has the authority to act on behalf of PlantSnap; and

    d.     Matthew Giblin ("**Giblin**"), the Chief Operations Officer, was appointed as the Chief Executive Officer, Treasurer, and Secretary.

62.     On March 11, 2021, PlantSnap's counsel sent a cease and desist and demand for turnover letter to Ralls (the "**Cease and Desist Letter**").

**Ralls' Actions as Director, Officer, and Majority Shareholder of PlantSnap**

Ralls' Self-Dealing with Earth

63.     Ralls is the sole officer and director of non-party Earth.com, Inc. ("**Earth**").

64.     Upon information and belief, Earth is the alter ego of Ralls.

65.     Earth provides news and information concerning nature, science, and the environment through the website, http://www.earth.com/ (the "**Earth Domain**").

66.     Earth has no ownership interest in the Earth Domain.

67.     Earth previously rented the Earth Domain pursuant to that certain Rent-to-Own—Domain Name Sale Agreement dated June 27, 2016 between Ralls Enterprises, LLC and Innovation HQ, Inc. ("**Innovation**") (the "**Rent-to-Own Agreement**").

68.     Earth defaulted on the Rent-to-Own Agreement within months of executing the agreement.

69.     On April 25, 2022, Innovation sent a letter to Ralls, declaring a default under the Rent-to-Own Agreement and notifying Ralls of Innovation's intention to repossess the Earth Domain.

70.     Neither Ralls nor Earth (nor any affiliated entity) cured the default, and Innovation repossessed the Earth Domain.

71.     Ralls used PlantSnap's vendors, contractors, and intellectual property to further Earth's operations without compensating PlantSnap.

72.     The database that comprises the plant profiles, which allow the PlantSnap App to function, is in the possession or control of Earth.

73.     PlantSnap does not have access to those plant profile pages.

74.     PlantSnap ran three crowdfunding campaigns.

75.     At the onset of the third campaign in October 2019, Giblin was responsible for preparing financials and having PlantSnap's financials audited.

76.     During that process, Giblin discovered, for the first time, that Ralls had been paying Earth hundreds of thousands of dollars under the category, "Advertising," under a certain Sponsorship Agreement dated January 1, 2017 between PlantSnap and Earth (the "**Sponsorship Agreement**").

77.     The Sponsorship Agreement provided no discernable value to PlantSnap.

78.     Upon information and belief, Ralls executed the Sponsorship Agreement in an effort to justify monetary transfers from PlantSnap to Earth.

79.     Upon Information and Belief, Ralls did not execute the Sponsorship Agreement until well-after the purported January 1, 2017 date of execution.

80.     Following the discovery that Ralls transferred PlantSnap's funds to Earth, Ralls signed a Debt Cleanup Board Resolution, which required Ralls to (a) transfer financial control to Giblin and Johnson for budgeting and banking purposes, and (b) segregate funds from the third crowdfunding campaign into a separate bank account.

81.     Ralls signed the Debt Cleanup Board Resolution with no intention to abide by its terms.

82.     Ralls refused Giblin access to PlantSnap's bank account.

83.     Ralls refused to change the signatory authority on PlantSnap's bank account.

DHN Unauthorized Loan and Misrepresentations

84.     PlantSnap, DEJP, Ralls, and Earth executed a certain Memorandum of Terms for Purchase of Series Seed Preferred Stock of PlantSnap Inc. dated January 27, 2021 (the "**Memorandum**").

85.     The nonbinding Memorandum was entered into in an attempt to reduce PlantSnap's obligations to DEJP by converting DEJP's debt to equity, and to prevent DEJP from issuing a notice of default.

86.     The Memorandum refers to Ralls and Earth as if they were one entity.

87.     PlantSnap, DEJP, Ralls, and Earth made several representations as part of the Memorandum.

10

88.     One of those representations concerned PlantSnap's relationship with Evergreen Garden Center ("**Evergreen**"), and a payment made by Evergreen in the amount of $300,000.00 pursuant to an agreement between PlantSnap and Evergreen (the "**Evergreen Payment**").

89.     Ralls represented, "Ralls warrants that he has not, as of the date of this Memorandum, and will not, hypothecate, pledge, promise, factor, obtain an advance upon, or encumber in any other fashion the proposed initial Evergreen partnership payment."

90.     Despite representing that he would not "obtain an advance upon" the Evergreen Payment, Ralls had already taken the letter of intent that the Evergreen Payment was based on to DHN Capital, LLC d/b/a Nations Interbanc ("**DHN**"), a factoring company, on or around December 24, 2020.

91.     Ralls obtained $214,000.00 in accounts receivable advance loans from (the "**DHN Advance**").

92.     As collateral for the DHN Advance, Ralls assigned the revenue that PlantSnap received from MonetizeMore and two app stores (the "**Collateral Sources**").

93.     Giblin discovered the existence of the DHN Advance upon the Evergreen Payment in February of 2021.

94.     On February 15 and 17, 2021, Giblin informed Ralls that he lacked authority to undertake the DHN Advance.

95.     DHN required that the payments from the Collateral Sources be deposited directly into a DHN sweep account.

96.     DHN did not receive the December and January MonetizeMore remittances.

97.    Ralls changed the remittance instructions and redirected several payments to PlantSnap's accounts, including a $10,457.29 payment on January 19, 2021 and a $6,458.24 payment on February 16, 2021.

98.    Ralls transferred a substantial portion of the diverted revenue from the Collateral Sources from PlantSnap to Earth.

99.    DHN issued a notice of default to PlantSnap, and demanded that PlantSnap cure its default by March 1, 2021.

100.    Ralls cured the default sometime in March of 2021 after DHN threatened to notify the two app stores, the major sources of revenue for PlantSnap, and only after transferring more than $80,000.00 of the Evergreen Payment to Earth.

101.    Ralls' actions and false misrepresentation effectively destroyed PlantSnap's ability to eliminate more than $5,971,186.47 in outstanding obligations to DEJP.

<u>AWS Electronic Payment Error</u>

102.    PlantSnap's servers are hosted by AWS.

103.    Without AWS, the PlantSnap App would cease functioning without another web hosting service.

104.    In December of 2020, PlantSnap was three months behind in payments to AWS and owed approximately $33,000.00.

105.    In January of 2021, Ralls represented to AWS and Giblin that Ralls had paid the delinquent payments.

106.    Ralls intentionally deceived AWS and PlantSnap into believing Ralls sent the payments.

107.   Upon information and belief, Ralls initiated an electronic transfer to AWS when he was aware that there were insufficient funds to cover such payments, and then took a screen shot of the initiated payment and shared that screen shot with AWS.

108.   AWS later reported that there was an error with the payments.

109.   Several days later, Ralls claimed not to know what happened and stated there must be an error in the payment system.

<u>Ralls Stole PlantSnap's Funds</u>

110.   Until DEJP took control of PlantSnap, there was an extensive amount of commingling between PlantSnap, Ralls, and Earth.

111.   A substantial portion of Earth's expenses were paid for by PlantSnap, including at least $902,003 in 2018 and 2019.

112.   PlantSnap received no consideration for paying Earth's expenses.

113.   Ralls and Earth stole at least $2,620,731 as set forth below:

a.   $1,741,316 in transfers from PlantSnap's bank accounts to other bank accounts under Ralls' control;

b.   $366,048 from Ralls' use of business credit cards for personal spending;

c.   $292,259 in payments made by PlantSnap to the personal credit cards of Ralls and his mother, Karen Barett;

d.   $104,000 in rent paid for Ralls' house in Telluride, Colorado, which was reported as a business expense;

e.   $65,007.28 paid towards a prior litigation settlement related to GreenAtom, Inc., another affiliated entity of Ralls, for which PlantSnap has no involvement;

f.   $32,000 paid directly to Ralls' mother; and

g.   $25,107 in ATM withdrawals and other cash withdrawals from PlantSnap's checking accounts.

114.    In late-2020 and early-2021, Ralls solicited six investors (the "**705 Investors**") to invest in PlantSnap.

115.    Between February 22 and March 8, 2021, and despite knowing the company had defaulted on its obligation to DEJP, Ralls entered into six convertible notes on behalf of PlantSnap with the 705 Investors.

116.    DEJP did not consent to the issuance of the six convertible notes, as required under that certain Stockholders' Agreement dated October 19, 2017 between PlantSnap, Ralls, and DEJP.

117.    The last three promissory notes executed by Ralls on behalf of PlantSnap on March 8, 2021 occurred just two days *after* DEJP informed Ralls that it was taking ownership of the Pledged Shares, and just one day before Ralls was removed as a director and officer.

118.    Of these six investors, one "Accredited Investor," who could "only scrape together about $500," eventually agreed to invest $5,000, an amount she clearly could not afford, after Ralls reduced the "minimum" investment amount from $125,000 to $20,000 to $5,000.

119.    On account of DEJP foreclosing on Ralls' shares in PlantSnap, and the Board removing Ralls as an officer and director of PlantSnap, Ralls recognized that he would no longer be entitled to such proceeds, and directed the 705 Investors to wire the funds directly to Earth's bank account—bypassing PlantSnap altogether.

120.    Ralls and Earth took $705,000 from PlantSnap during this time, $630,000 of which occurred on or after the date on which Ralls was removed as an officer, director, and shareholder of PlantSnap.

121.    When one investor asked why the money was being transferred to Earth, and not PlantSnap, Ralls stated on March 11, 2021, "I'm working to integrate earth.com and PlantSnap under one umbrella, and that umbrella is what you are buying stock in."

122.    This false statement was made two days after Ralls was removed as an officer, director, and shareholder of PlantSnap.

123.    Ralls has purposefully concealed a seventh investor, Philip N. Daly ("**Daly**"), with whom he executed a convertible promissory note on behalf of PlantSnap on March 5, 2021.

124.    During the State Court Action, Ralls did not identify Daly as a person with whom he solicited or entered into an agreement as an investor or creditor, despite PlantSnap and DEJP issuing written discovery in the State Court Action (as defined below) on such topics.

125.    PlantSnap only learned by Daly when he filed Proof of Claim in Ralls' Colorado bankruptcy case (discussed below).

126.    While duping the 705 Investors and siphoning off PlantSnap's funds for his own benefit, Ralls failed to pay PlantSnap's creditors.

127.    Ralls conversion of the 705 Investor's funds resulted in a Colorado court entering a judgment for conversion in the amount of $705,000.00 (discussed more fully below).

128.    Since Ralls was removed as an officer and director of PlantSnap, PlantSnap spent considerable resources working to resolve past-due payments with PlantSnap's creditors, and has even had to litigate with several of PlantSnap's and/or Earth's creditors. *See, e.g., SocialCode, LLC v. PlantSnap Inc.*, No. 2023CV30002 (Colo. Dist. Ct. San Miguel Cty. Jan. 31, 2023); *Entravision v. PlantSnap Inc.*, No. 2022CV30007 (Colo. Dist. Ct. San Miguel Cty. Mar. 3, 2022).

**Following His Removal, Ralls Continued to Wrongly Act on Behalf of PlantSnap**

129.    After losing his shares in PlantSnap and being removed as an officer and director of PlantSnap, Ralls took a number of steps to cover his tracks and assert control over PlantSnap's operations.

130.    Upon learning that DEJP intended to invoke its rights under the Obligations, Ralls transferred funds previously diverted from PlantSnap to Earth back to PlantSnap's account and to PlantSnap's vendors.

131.    Between February 22 and March 10, 2021, Ralls made twenty-three transfers totaling $240,100.00 from Earth to PlantSnap.

132.    Ralls ignored the Board's resolutions, and frustrated PlantSnap's operations.

133.    Ralls refused to turn over to PlantSnap the Accounts which were in his possession, custody, or control.

134.    Ralls prevented Giblin, PlantSnap's Chief Executive Officer, from accessing the Accounts, including PlantSnap's bank accounts and the two app stores, where a majority of PlantSnap's revenue is earned.

135.    On March 14, 2021, Ralls cut off Giblin's access to his company email account.

136.    Ralls prevented PlantSnap's consultants from accessing certain Accounts, inhibiting the consultants from performing their work as directed by the Board.

137.    Ralls continued to send messages to PlantSnap's contract counterparties, vendors, customers, and consultants claiming to be acting on PlantSnap's behalf.

138.    Ralls continued to act on PlantSnap's behalf, despite being removed as a shareholder and CEO.

139.    In a March 13, 2021 email to Evergreen and select PlantSnap individuals, Ralls indicated that he would continue to work on the PlantSnap/Evergreen partnership.

140.    On March 15, 2021, Ralls sent an email to certain consultants, stating "I AM allowed/able and that I SHOULD continue operating the company," and that he would continue "working to get PlantSnap 5.0 WITH all Evergreen content fully implemented and launched by April 1."

### The State Court Action

141.    On March 17, 2021, PlantSnap initiated an action against Ralls, Earth.com, Inc. ("**Earth**"), and later, Digital Earth Media, Inc., and Metaversal Knowledge, Inc., before the District Court for San Miguel County, Colorado in the case styled, PlantSnap Inc. v. Ralls, No. 2021CV30005 (Colo. Dist. Ct. San Miguel Cty. Mar. 17, 2021) (the "**State Court Action**").

142.    In the State Court Action, PlantSnap asserted claims against the Defendants for conversion, civil theft, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, fraud, unjust enrichment, constructive trust, and tortious interference with contractual relationships.

143.    PlantSnap also sought a declaration that Ralls was properly removed from PlantSnap, and both sides moved for injunctive relief on that issue.

144.    On April 23, 2021, the State Court heard PlantSnap and Ralls' cross-motions for preliminary injunction, and on April 27, 2021 at 3:49 PM MT, entered the *Combined Order Re: Plaintiff's and Defendant's Motions for Preliminary Injunction* (the "**Combined Order**"), a copy of which is attached at Exhibit 4.

145.    In the Combined Order, the State Court rejected Ralls' "incredible" testimony and arguments as to why he was entitled to the Pledged Shares, and found that "Ralls was properly

removed from the PlantSnap Board once [DEJP] proceeded pursuant to the Consolidated Note [and] Amex Agreement." *Id*. at 6, 9.

146.    As a result, the State Court (i) "immediately enjoined [Ralls] from acting on behalf of PlantSnap and representing to any third parties that he is currently affiliated with PlantSnap," and (ii) ordered that Ralls "shall immediately turn over complete access to all of PlantSnap's Accounts," including PlantSnap's G Suite. *Id*. at 15–16.

147.    On April 27, 2021 at 4:31 PM MT, ***forty-two minutes after the Court entered the Combined Order***, Ralls logged in as the system administrator of PlantSnap's G Suite and deleted fifteen email accounts, which included communications between Ralls and investors.

148.    Ralls refused to turn over access to PlantSnap's G Suite until shortly after the accounts were permanently deleted.

149.    Ralls continued to operate a bank account in the name of PlantSnap well after the State Court entered the Combined Order and in violation thereof.

150.    Ralls attempted to solicit a $750,000 investment through his Earth contacts in May of 2021, pledging the shares on which the State Court already found DEJP properly foreclosed.

151.    On September 30, 2022, Ralls pleaded guilty to contempt for deleting PlantSnap's emails in the G Suite and for using a TIAA bank account held by PlantSnap for personal use in violation of the Combined Order.

152.    On October 13, 2022, the State Court issued an Order finding Ralls in contempt of court. *See* Exhibit 5.

153.    The State Court awarded PlantSnap and DEJP both remedial and punitive sanctions, which included awarding PlantSnap and DEJP $84,938.76 and $63,055.00,

respectively, in fees and expenses for prosecuting the contempt motions, and sentencing Ralls to forty-eight hours in county jail.

154.    On February 28, 2023, PlantSnap moved for partial summary judgment against Ralls and Earth.

155.    On February 28, 2023, DEJP moved for partial summary judgment against Ralls.

156.    On April 18, 2023, the State Court granted in part DEJP's motion for partial summary judgment, awarding $978,043.23 to DEJP against Ralls, and reaffirming that DEJP properly foreclosed on the Pledged Shares.

### Ralls' First Bankruptcy

157.    On April 19, 2023, and on the eve of trial in the State Court Action, Ralls (along with his entities) filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Colorado (the "**Colorado Bankruptcy Court**"). *See In re Ralls*, No. 23-11620-TBM (Bankr. D. Colo. Apr. 19, 2023); *In re Earth.com, Inc*., No. 23-11621-TBM (Bankr. D. Colo. Apr. 19, 2023); *In re EarthSnap, Inc.*, No. 23-11622-TBM (Bankr. D. Colo. Apr. 19, 2023) (the "**Colorado Bankruptcy Case**").

158.    On May 8, 2023, PlantSnap and DEJP moved for relief from the automatic stay under section 362(d) of the Bankruptcy Code to liquidate their claims in the State Court Action.

159.    On July 19, 2023, the Court granted relief from the automatic stay for PlantSnap and DEJP to liquidate their claims in the State Court.

160.    In the Colorado Bankruptcy Case (in multiple filings), Ralls and his counsel made clear that the case was filed to avoid going to trial in the State Court Action.

161.    Ralls and his entities dismissed the Colorado Bankruptcy Case shortly after the court granted PlantSnap's and DEJP's motion for relief from the automatic stay.

**The State Court Action Continues and Ralls Is Found Liable for Conversion**

162.    After the Colorado Bankruptcy Case stay was lifted, trial was set, for a second time, in the State Court Action.

163.    Also after the stay was lifted, on January 11, 2024 (and reduced to a final judgment on February 29, 2024), the State Court granted, in part, PlantSnap's motion for partial summary judgment, awarding $705,000.00 to PlantSnap against Ralls for the conversion of the 705 Investor's money. *See* Ex. 3.

164.    In Colorado "[c]onversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956).

165.    In her order, the State Court judge found "[t]he undisputed facts show that Ralls converted the investor funds" and that "the elements of conversion are satisfied against Ralls because he exercised dominion and control over the investor funds without authorization." Ex. 6 at 16. The judge also found that "PlantSnap is entitled to summary judgment against Ralls on its conversion claim because there is no dispute that Ralls exercised unauthorized control over the investor funds and used them for an improper purpose." *Id.* at 17.

166.    Ralls did not appeal the State Court's ruling.

**The State Court Case Settles and Ralls Almost Immediately Breaches the Settlement Agreement**

167.    PlantSnap and Ralls consensually resolved the claims asserted in the State Court Action, and executed that certain Binding Term Sheet dated February 19, 2024 (the "**Agreement**"), a copy of which is attached at Exhibit 6 (with attachments).

168.    In Colorado, a settlement agreement is a contract to end judicial proceedings. *See Recreational Dev. Co. v. Am. Constr. Co.*, 749 P.2d 1002 (Colo. App.1987).

169.   A settlement agreement is governed by and found enforceable under common law contract principles. *See Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo. 2008). Courts "interpret and enforce settlement agreements in accord with principles of contract law and with the policy favoring dispute resolution." *People v. Forsyth*, 292 P.3d 1248, 1255 (Colo. 2012).

170.   A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists. *See Goltl v. Cummings*, P.2d 556, 559 (Colo. 1963) (stating courts "look with favor upon agreements and stipulations to end litigation, and will enforce them if possible").

171.   A settlement agreement can be enforced if the terms are sufficiently definite to allow a court to determine whether the parties have complied with them. *See Stice v. Peterson*, 355 P.2d 948 (Colo. 1960); *Mestas v. Martini*, 155 P.2d 161 (Colo. 1944).

172.   A settlement exists in the form of the Agreement.

173.   The State Court agreed that the Agreement was a valid and binding contract and, on July 31, 2024, it entered Ralls' confessed judgment (one of the attachments) in PlantSnap's favor in the amount of $2,500,000 based on the Agreement being in default. *See* Ex 2.

174.   In the confessed judgment, Ralls admitted to fraud, fraudulent inducement, fraudulent transfer, conversion, civil theft, and common law fraud, deceit, or manipulation in connection with the sale of securities. *See id*.

175.   Ralls admitted to violations of sections 523(a)(2), (a)(4), (a)(6), and (a)(19) of the Bankruptcy Code.

176.   Pursuant to the Agreement, the Debtor and other non-Debtor defendants agreed to pay PlantSnap $2.5 million, the amount of which carries an 8% interest rate and 12% default interest rate. *See* Ex. 6.

177.   PlantSnap and the Debtor agreed that the $2.5 million debt would be secured by Ralls' shares in Digital Earth Media. *Id*. at ¶ 3(A).

178.   The Agreement also allowed for PlantSnap to file a UCC-1 financing statement, which it did on February 28, 2024, in both Colorado and Texas. *Id*. at ¶ 3(C) ("Ralls authorizes PlantSnap to file a UCC-1 financing statement."); *see also* Exhibits 7-8.

179.   Of critical importance, Ralls also gave away all voting rights associated with his Digital Earth Media shares upon breach of the Agreement. The Agreement states "PlantSnap, upon an event of default, shall be empowered to exercise all voting and other rights associated with the Pledged Shares [in Digital Earth Media, the 100% owner of EarthSnap] until such time as their disposition pursuant to the Uniform Commercial Code."

180.   In short, upon breach of the Agreement, Ralls lost ALL ability to vote his shares related to any of the companies (Digital Earth Media is the parent and 100% owner of both Earth.com and EarthSnap). As such, Ralls had no legal right to vote his shares in EarthSnap (including voting in favor of filing for bankruptcy).

181.   Prior to execution of the Agreement, PlantSnap also obtained two judgments against Ralls in the State Court Action: (i) a judgment for $705,000, and 8% per annum interest, entered on January 11, 2024 (and reduced to a final judgment on February 29, 2024), stemming from Ralls' conversion of funds; and (ii) a judgment for attorney fees of $84,189.00 and costs of $749.76, for a total of $84,938.76, and 8% per annum interest, issued on October 13, 2022 (and reduced to a final judgment on February 15, 2023), stemming from Ralls' contempt of court related violations of court orders and destruction of evidence (for which Ralls also served a short jail sentence) (the "Judgments").

182.    The Judgments were forgiven under the Agreement, so long as Ralls was not in default. Ralls made the initial payments per the terms of the Agreement, but failed to make the July payment, and the Judgments, along with the $2,500,000 settlement amount, became due and owing upon Ralls' default.

183.    As stated, and after the Court determined the Agreement was in default, the State Court entered the $2.5 million confessed Judgment on July 31, 2024. *See* Ex. 2.

### Ralls Files His Second Bankruptcy

184.    On August 18, 2024, the Debtor filed yet another voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

185.    PlantSnap timely filed Proof of Claim No. 6-1 (the "**Claim**"), asserting a claim for $3,434,927.85, of which $2,599,175.95 is secured and $835,751.90 is unsecured, and the basis of which is the PlantSnap Judgments.

186.    The PlantSnap Judgments are all prepetition judgments, entered in the State Court Action, and signed by the Judge in that matter.

187.    The PlantSnap Judgments are nondischargeable under the Code.

### COUNT I
### Nondischargeability of the PlantSnap Judgments Under 11 U.S.C. § 523(a)(2)

188.    PlantSnap incorporates its prior allegations as if fully set forth herein.

189.    Section 523(a)(2) of the Bankruptcy Code provides, in relevant part, that there is no discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

190.    The Debtor obtained PlantSnap's money, property, and services through actual fraud.

191.    The Debtor admitted to violating section 523(a)(2) of the Bankruptcy Code as outlined in the Confession of Judgment, which was agreed to and entered by the State Court. *See* Ex. 1-2.

192.    The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in section 523(a)(2) of the Bankruptcy Code. *See id.*

193.    Further, the Colorado Court entered judgment against Ralls for conversion of $705,000.00 of PlantSnap's money. The judge was unequivocal that there was "no dispute that Ralls exercised unauthorized control over the investor funds and used them for an improper purpose." Ex. 3 at 17.

194.    The damages subject to the PlantSnap Judgments were money and property obtained by actual fraud.

195.    As such, the Debtor's acknowledged fraud, the PlantSnap Judgments, totaling $3,205,000.00, are nondischargeable under section 523(a)(2) of the Bankruptcy Code.

**COUNT II**
**Nondischargeability of the PlantSnap Judgments Under 11 U.S.C. § 523(a)(4)**

196.    PlantSnap incorporates its prior allegations as if fully set forth herein.

197.    Section 523(a)(4) of the Bankruptcy Code provides that there is no discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

198.    The Debtor admitted to violating section 523(a)(4) of the Bankruptcy as outlined in the Confession of Judgment, which was agreed to and entered by the State Court. *See* Ex. 1-2.

199.    The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in section 523(a)(4) of the Bankruptcy Code. *See id.*

200.    Further, the Colorado Court entered judgment against Ralls for conversion of $705,000.00 of PlantSnap's money. The judge was unequivocal that there was "no dispute that

Ralls exercised unauthorized control over the investor funds and used them for an improper purpose." Ex. 3 at 17.

201.    The damages subject to the PlantSnap Judgments were based on fraud and defalcation while Ralls acted as President and CEO of PlantSnap, and were the product of embezzlement and larceny.

202.    As such, the Debtor's acknowledged fraud, the PlantSnap Judgments, totaling $3,205,000.00, are nondischargeable under section 523(a)(4) of the Bankruptcy Code.

**COUNT III**
**Nondischargeability of the PlantSnap Judgments Under 11 U.S.C. § 523(a)(6)**

203.    PlantSnap incorporates its prior allegations as if fully set forth herein.

204.    Section 523(a)(6) of the Bankruptcy Code provides that there is no discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

205.    The Debtor caused willful and malicious injuries to PlantSnap.

206.    Debtor admitted to violating section 523(a)(6) of the Bankruptcy Code as outlined in the Confession of Judgment, which was agreed to and entered by the State Court. *See* Ex. 1-2.

207.    The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in section 523(a)(6) of the Bankruptcy Code.

208.    Further, the Colorado Court entered judgment against Ralls for conversion of $705,000.00 of PlantSnap's money. The judge was unequivocal that there was "no dispute that Ralls exercised unauthorized control over the investor funds and used them for an improper purpose." Ex. 3 at 17.

209.    The damages subject to the PlantSnap Judgments were based on Ralls' willful and malicious injury to PlantSnap and its property.

25

210.   As such, the Debtor's acknowledged fraud, the PlantSnap Judgments, totaling $3,205,000.00, are nondischargeable under section 523(a)(6) of the Bankruptcy Code.

211.   Moreover, Ralls admitted to deleting certain Accounts, specifically the email accounts in the G Suite, in violation of the State Court's Combined Order.

212.   As a result of Ralls' flagrant violation of the Combined Order, PlantSnap was required to expend $84,938.76 to unwind Ralls' contemptuous actions in order to prosecute its claims in the State Court Action.

213.   PlantSnap would not have incurred such fees and expenses had Ralls complied with his obligations under the Colorado Rules of Civil Procedure and the Combined Order.

214.   As a result of the willful and malicious injuries to PlantSnap caused by the Debtor, the portion of the PlantSnap Judgments relating to the attorneys' fee award ($84,938.76) is nondischargeable under section 523(a)(6) of the Bankruptcy Code.

## COUNT IV
### Nondischargeability of the PlantSnap Judgments Under 11 U.S.C. § 523(a)(19)

215.   PlantSnap incorporates its prior allegations as if fully set forth herein.

216.   Section 523(a)(19) of the Bankruptcy Code provides that there is no discharge of a debt when there are issues of common law fraud, deceit, or manipulation in connection with the sale of securities.

217.   The Debtor engaged in common law fraud, deceit, or manipulation in connection with the sale of securities.

218.   Debtor admitted to violating section 523(a)(19) of the Bankruptcy Code as outlined in the Confession of Judgment, which was agreed to and entered by the State Court. *See* Ex. 8.

219.   The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in 11 U.S.C. §§ 523(a)(19).

220.    Further, the Colorado Court entered judgment against Ralls for conversion of $705,000.00 of PlantSnap's money. The judge was unequivocal that there was "no dispute that Ralls exercised unauthorized control over the investor funds and used them for an improper purpose." Ex. 3 at 17.

221.    Of note, in her $705,000.00 judgment, the Colorado Court found that Ralls engaged in common law fraud, deceit, or manipulation in connection with the sale of securities, to wit "[u]nder section 12.1(e) of the Stockholders' Agreement, PlantSnap could not issue any debt securities without DEJP's consent. Ralls conducted the debt offering without authorization and there is no dispute that he placed the proceeds in an unauthorized account. Therefore, the elements of conversion are satisfied against Ralls because he exercised dominion and control over the investor funds without authorization." *Id*. at 16.

222.    As such, the Debtor's acknowledged fraud, the PlantSnap Judgments, totaling $3,205,000.00, are nondischargeable under section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, PlantSnap respectfully requests relief against Ralls for the following:

A.      A declaratory judgment that the PlantSnap Judgments, totaling $3,205,000.00, and any interest due thereunder, and the attorney fees totaling $84,938.76 to unwind Ralls' contemptuous actions in the State Court Action are nondischargeable under 11 U.S.C. § 523(a)(2), (4), (6), or (19);

B.      An award of PlantSnap's attorneys' fees and costs as allowed by the Agreement or law; and

C.      Any other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 22, 2024                    /s/ Dean E. Richardson
                                           Dean E. Richardson (35349)
                                           Patrick R. Akers (54803)
                                           FENNEMORE CRAIG, P.C.
                                           3615 Delgany Street, Suite 1100
                                           Denver, Colorado 80216
                                           (303) 291-3200
                                           (303) 291-3201 (facsimile)
                                           drichardson@fennemorelaw.com
                                           pakers@fennemorelaw.com